UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH                                                          (973) 645-4693
  BANKRUPTCY JUDGE                                                       Fax: (973) 645-2606

**NOT FOR PUBLICATION**

**FILED**
JAMES J. WALDRON, CLERK

**NOV. 29, 2006**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: s/ Ronnie Plasner, DEPUTY

November 29, 2006

**LETTER OPINION**
**ORIGINAL FILED WITH THE CLERK OF THE COURT**

Raymond & Raymond
Herbert B. Raymond, Esq.
7 Glenwood Avenue
Suite 408
East Orange, New Jersey 07017
*Counsel for Atoo H. Sakhrani*

Porzio, Bromberg & Newman, PC
John S. Mairo, Esq.
Terri Jane Freedman, Esq.
Robert M. Schechter, Esq.
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
*Counsel for First National Bank of Arizona*

Page 2
November 29, 2006

Re:     *In re Atoo H. Sakhrani*
        <u>Case No.: 06-16563 (DHS)</u>

Dear Counsel:

  On October 4, 2006, First National Bank of Arizona (hereinafter "FNBA") filed a motion to dismiss the instant bankruptcy proceeding. FNBA argues that Atoo H. Sakhrani is not an eligible debtor pursuant to § 109(g)(2) of the Bankruptcy Code and that it should be granted prospective relief from the automatic stay for any future bankruptcy filings. In the alternative, FNBA asks that it be granted continued relief from the automatic stay. This Court adjourned the hearing on FNBA's motion and permitted Mr. Sakhrani to file an opposition brief by October 31, 2006. An opposition brief was untimely filed on November 6, 2006. This Court will consider Mr. Sakhrani's opposition, however, which argues in the alternative that: (i) § 109(g) was never triggered as it requires a re-filing within 180 days of the motion for stay relief, and (ii) if § 109(g) is applicable, then this Court should require a causal connection between the motion for stay relief and voluntary dismissal, which he argues is not found here.

  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (G). Venue is proper under 28 U.S.C. §§ 1408 and 1409. For the reasons that follow, FNBA's motion to dismiss is granted.

  On July 28, 2005, Mr. Sakhrani filed a voluntary Chapter 13 bankruptcy petition which was subsequently converted to a case under Chapter 11. On or about December 21, 2005, FNBA moved for relief from the automatic stay to continue litigation in the United States District Court for the District of New Jersey (hereinafter "District Court Litigation"). That motion was granted by this Court in an Opinion and Order dated January 20, 2006. In granting the motion, this Court stated that:

> [it] will not [recount] the voluminous procedural history and underlying facts of the District Court Litigation for purposes of deciding this motion. It is sufficient to state that on June 20, 2002, FNBA filed a complaint against [Mr. Sakhrani, among others,] captioned *First National Bank of Arizona v. Majestic Home Mortgage, LLC, et al.*, Civil Action No. 02-2935 (JAG). The [District Court] Litigation arises from FNBA's allegation of providing [Mr. Sakhrani] with a mortgage loan in the amount of $353,700.00 on property located at 300 Gorge Road, Cliffside Park, New Jersey. According to the submission filed by FNBA, the District Court Litigation has a long and tortured procedural history, characterized by [Mr. Sakhrani's] 'repetitive motions' and disregard for court orders. Notably, the District Court Litigation has been ongoing for over [four]

>    years, [and] involves nine different parties, cross-claims, counter-claims,
>    [as well as] hundreds of filed pleadings.

*January 20, 2006, Opinion of The Honorable Donald H. Steckroth on FNBA's Motion for Relief from the Automatic Stay in Case No. 05-34286*, p. 2.

On or about April 10, 2006, Mr. Sakhrani moved to voluntarily dismiss his Chapter 11 proceeding, which was granted by this Court on May 9, 2006. On July 19, 2006, Mr. Sakhrani filed the instant Chapter 13 bankruptcy petition, only 70 days after the Order voluntarily dismissing his earlier petition was entered. On August 8, 2006, Mr. Sakhrani filed a motion to extend the automatic stay against FNBA, among others, which was denied by this Court on October 16, 2006. Mr. Sakhrani's certification in support of that motion to extend the automatic stay stated the following relevant points:

> a) Mr. Sakhrani's July 28, 2005, bankruptcy petition "was filed to stop an impending sheriff's sale" on property located at 53 Engle Street, Cresskill, New Jersey.
> b) Mr. Sakhrani voluntarily dismissed his July 28, 2005, bankruptcy petition "in order to pursue state court claims and setoffs."
> c) "On July 20, 2006, I received a notice that the property located at 53 Engle Street, Cresskill, New Jersey . . . was scheduled for a sheriff's sale on August 25, 2006."
> d) "[T]his case was filed in response to an unlawful sheriff's sale scheduled for August 25, 2006. I am currently pursuing my state court claims and remedies."
> e) "I have two state court issues relating to the mortgages on this property and another."
> f) "I would ask the court to extend the automatic stay to allow me time to settle the state court issues and save my properties."

*Certification of Atoo H. Sakhrani in Support of his August 8, 2006, Motion to Extend the Automatic Stay*. This Court obliged Mr. Sakhrani's request for time to settle his state court issues, adjourning the hearing date on Mr. Sakhrani's motion to extend the automatic stay by 55 days.

Section 109 of Title 11 of the United States Code governs in this instance, and provides in relevant part:

>    (g) Notwithstanding any other provision of this section, no individual . . . may be a debtor under [Title 11] who has been a debtor in a case

Page 4
November 29, 2006

>   pending under this title at any time in the preceding 180 days if --
>
>   . . .
>
>   (2) the debtor requested and obtained the voluntary dismissal of the case
>   following the filing of a request for relief from the automatic stay provided
>   by section 362 of this title.

11 U.S.C. § 109(g)(2).

The purpose of § 109 is to forestall abuse of the bankruptcy system by "prevent[ing] debtors from using repetitive filings as a method of frustrating [a] creditor's efforts to recover what is owed to them." 2 COLLIER ON BANKRUPTCY ¶ 109.08 (Alan N. Resnick & Henry J. Sommer eds.,15th ed. rev.); *see In re Keul*, 76 B.R. 79, 80-81 (Bankr. E.D. Pa. 1987) (citations omitted).

The Third Circuit reads § 109(g) literally, as it is patently unambiguous, interpreting the word "following" as subsequent in time. The 180-day provision is applied without regard to the circumstances or equities of the case, or a causal relationship between the motion for relief from the automatic stay and voluntary dismissal. *See In re Munkwitz*, 235 B.R. 766, *768 (E.D. Pa. 1999) (application of § 109(g)(2) is mandatory) (citations omitted); *In re Narod*, 138 B.R. 478, 483 (E.D. Pa. 1992) (citations omitted); *see also In re Samuel*, 77 B.R. 520, 522 (Bankr. E.D. Pa. 1987) (section 109(g) requires dismissal of cases falling squarely between its parameters, without regard to the equities at hand); *In re Arena*, 81 B.R. 851, 854 (Bankr. E.D. Pa. 1988) (citations omitted); *In re Walker*, 171 B.R. 197, 202 (Bankr. E.D. Pa. 1994) (citations omitted). Section 109(g) operates irrespective of the interval between the filing for relief from the automatic stay and the voluntary dismissal. *See In re Munkwitz*, 235 B.R. at *768.

Whenever practicable, statutory text is read and applied literally. *See Matteo v. Superintendent, Sci Albion*, 171 F.3d 877, 888 (3d Cir. 1999) ("legislative purpose 'is expressed by the ordinary meaning of the words used'") (quoting *Richards v. U.S.*, 369 U.S. 1, 9 (1962) (other citations omitted)); *U.S. v. Robinson*, 167 F.3d 824, 830-31 (3d Cir. 1999) (when statutory language is plain and unambiguous, a court must apply the language as written). When used as a preposition, the ordinary meaning of the word "following" is "subsequent to." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 883 (3d ed. 1993); *see In re Richardson*, 217 B.R. 479, 486-87 (Bankr. M.D. La. 1998) (holding that the primary meaning of the word "following" in § 109(g)(2) is "after").

>   Though this approach may be over-inclusive . . . a blanket rule to curb
>   potential abuse of the Bankruptcy Code is sensible. *See also Idahoan
>   Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3d Cir. 1998)
>   ("Where the statutory language is plain and unambiguous, further inquiry

Page 5
November 29, 2006

> is not required, except in the extraordinary case where a literal reading of the language produces an absurd result."). Nor is there evidence to suggest that a literal reading of the statute is contrary to Congressional intent. *See id.* ("[A] court may depart from the plain language of a statute only by an extraordinary showing of a contrary congressional intent in the legislative history."); *see also Estate of Gibbs v. U.S.*, 161 F.3d 242, *250 n.8 (3d Cir. 1998) (plain language of a statute cannot be ignored for policy reasons) (citing *Estate of Applebaum v. Comm'r of Internal Revenue*, 724 F.2d 375, 377-78 (3d Cir. 1983)). [A]ny hardship produced by the mandatory application of this provision is partly within a debtor's control in electing to request a dismissal. (citation omitted).

*In re Munkwitz*, 235 B.R. at *768-69.

However, dismissal is not automatic provided a bona fide change in circumstances can be shown. *See Carr v. Sec. Sav. & Loan Ass'n*, 130 B.R. 434, *436 (D.N.J. 1991) (upholding the bankruptcy court's refusal to dismiss a debtor's second proceeding pursuant to § 109(g)(1), in spite of the debtor's failure to make payments to the trustee in her previous bankruptcy proceeding, due to a "bona fide change in circumstances") (citing *In re Chmura*, 63 B.R. 12 (Bankr. D.N.J. 1986)). Moreover, a bankruptcy court has discretion to grant prospective relief from the automatic stay for equitable reasons. *See In re Najieb*, 80 Fed. Appx. 734, 735-36 (3d Cir. 2003) (upholding the grant of prospective relief from the automatic stay by denying a petition for writ of mandamus due to the debtor's history of failed bankruptcy petitions and bad faith filing solely to delay foreclosure); *see also In re Mangano*, 253 B.R. 339, 345 (Bankr. D.N.J. 2000) (citing *see In re Hric*, 208 B.R. 21, 26 (Bankr. D.N.J. 1997) (internal citations omitted)).

Mr. Sakhrani moved for voluntary dismissal of his Chapter 11 case in order to proceed with state court claims only 80 days after FNBA was granted relief from the automatic stay. He then filed the instant bankruptcy petition 70 days after the Order approving voluntary dismissal was entered. These actions clearly trigger 11 U.S.C. § 109(g)(2), contrary to Mr. Sakhrani's assertions. Any hardship caused by strict application of this provision is controlled, at least in part, by Mr. Sakhrani. *See In re Munkwitz*, 235 B.R. at *768-69.

There is no showing before this Court of a bona fide change in circumstances. Mr. Sakhrani has stated under oath that he filed the instant bankruptcy petition on July 19, 2006, in order to stay the pending sheriff's sale of his Cresskill property. This Court is at a loss, however, to understand how the instant petition could have been prepared in response to the sheriff's sale when Mr. Sakhrani himself admitted that he did not receive notice of the pending sheriff's sale until July 20, 2006, the day after this bankruptcy petition was filed. In addition, Mr. Sakhrani has also stated on the record that he voluntarily dismissed his

Page 6
November 29, 2006

prior petition to pursue state court claims. However, when faced with a pending sheriff's sale, Mr. Sakhrani again filed for bankruptcy protection. He then sought an extension of the automatic stay in the instant bankruptcy petition while pursuing the same state court claims and remedies. Mr. Sakhrani cannot play both ends of the aisle, affirmatively litigating his state court claims and using the automatic stay to shield his properties from foreclosure. Even if these events could be construed as a change in circumstances, they are hardly bona fide.

If this Court were permitted to use discretion in determining whether to dismiss a petition for violation of § 109(g)(2), it would not do so here. The bedrock of bankruptcy is to provide an honest debtor with a fresh start.

> The remedial purpose of the Bankruptcy Code is 'to provide a procedure by which certain insolvent debtors can re[-]order their affairs, make peace with their creditors, and enjoy 'a new opportunity in life [and] a clear field for future effort, unhampered by the pressure and discouragement of pre[-]existing debt." *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (citation omitted). However, this 'fresh start' policy provided by the Bankruptcy Code applies only to the 'honest but unfortunate debtor.' *Id.* at 286-87 (citation omitted).

*U.S. v. Fegeley (In re Fegeley)*, 118 F.3d 979, 982-83 (3d Cir. 1997).

Third Circuit case law permits this Court to dismiss a bankruptcy petition for lack of good faith in filing, assessed by the totality of the circumstances. *See Tamecki v. Frank (In re Tamecki)*, 229 F.3d 205 (3d Cir. 2000); *Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.)*, 200 F.3d 154 (3d Cir. 1999); *In re Lilley*, 91 F.3d 491 (3d Cir. 1996); *Shinko v. Miele (In re Law Center)*, 29 Fed. Appx. 890 (3d Cir. 2002). "[A] petition in bankruptcy is filed in bad faith when the relief sought by the filing is exclusively the operation of an automatic stay in order to prevent a foreclosure." *In re Nelson*, 66 B.R. 231, 235 (Bankr. D.N.J. 1986) (citing *In re 299 Jack-Hemp Assoc.*, 20 B.R. 412 (Bankr. S.D.N.Y. 1982); *Cent. Bank v. Zed, Inc. (In re Zed, Inc.)*, 20 B.R. 462 (Bankr. N.D. Cal. 1982); *Capital Mgmt. Co. v. The Alison Corp. (In re Alison Corp.)*, 9 B.R. 827 (Bankr. S.D. Cal. 1981)).

Continuation of this bankruptcy proceeding creates the potential for abuse in light of other pending litigations. Mr. Sakhrani voluntarily dismissed his previous bankruptcy petition in order to litigate state court claims. Approximately two months later, he filed a second petition in bankruptcy when a party-creditor in a state court action sought a foreclosure sale. Mr. Sakhrani failed to list FNBA as a creditor in his bankruptcy petition and did not disclose his prior bankruptcy filing. Mr. Sakhrani's instant petition totals 46 pages, and is in no way a bare-bones petition one would expect to be filed by an individual who just

Page 7
November 29, 2006

learned of a pending foreclosure. Last, but certainly not least, the Bankruptcy Court is not a refuge to delay collection in the event of detrimental results in another litigation. This is not a case where an innocent debtor has fallen on hardship. Instead, Mr. Sakhrani has vigorously litigated various mortgages with his creditors in multiple forums, some of which date in excess of four years.

For all the aforementioned reasons, this Court lacks subject matter jurisdiction over the instant bankruptcy petition pursuant to 11 U.S.C. § 109(g)(2). Therefore, this Court hereby grants FNBA's motion to dismiss the bankruptcy petition and grants FNBA prospective relief from the automatic stay for future bankruptcy filings by Mr. Sakhrani. An Order in conformance with this Opinion has been entered by the Court and a copy is attached hereto.

Very truly yours,

/s/ Donald H. Steckroth

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Enclosure